FILED

2019 Jan-09  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JOHN HENRY,              )
                                    )
        Plaintiff,        )
                                      )
v.                         )    Case No.:  2:16-cv-00511-SGC
                                      )
WELLS REMODELING, LLC, et al.,    )
                                    )
        Defendants.    )

## MEMORANDUM OPINION & ORDER[1]

John Henry commenced this action against Wells Remodeling, LLC, and Andrew Wells, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  (Doc. 1).  Pending before the undersigned is the defendants' second motion for summary judgment.  (Doc. 43).  For the reasons discussed below, the motion is due to be denied in part and granted in part.

## I. Facts[2]

Wells Remodeling, LLC, d/b/a Alabama ReBath ("Alabama ReBath") provides bathroom remodeling services to residential customers.  (Doc. 44-7 at 1).  Andrew Wells ("Wells") is the president of Alabama ReBath.  (*Id.*).  Sometime

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 12).

[2] The following facts are undisputed, unless otherwise noted.  They are viewed in the light most favorable to Henry, as the non-movant, with Henry given the benefit of all reasonable inferences.

during the first half of 2015, Alabama ReBath hired John Henry ("Henry") as an installer and agreed to pay him $20 per hour.  (*Id.* at 2; Doc. 44-1 at 39).[3]

Henry started his work days at the Alabama ReBath office.  On his arrival, Henry typically would unload demolition debris from his company van and load materials required for that day's job.  (Doc. 44-1 at 7-8; Doc. 44-3 at 21-22; Doc. 46-1 at 1).[4]  Alabama ReBath did not pay Henry for the actual amount of time he spent performing these tasks (Doc. 44-7 at 2-3), and that time is not explicitly recorded on Henry's time sheets or pay sheets (*see, e.g.,* Doc. 44-5 at 42, 62).  The defendants claim that based on Wells' determination an installer could routinely unload demolition debris and load job materials in 15-30 minutes and that these tasks should rarely take more than 45 minutes to complete, Alabama ReBath paid installers for 45 minutes of "load/unload time" for each phase of a job.  (Doc. 44-7 at 2-3).  Wells testified that for Henry, this translated to $15.  (*Id.* at 3).[5]  Henry testified it typically took between 45 minutes and one hour to unload debris and load job materials and that it might have taken more than one-and-one-half hours to perform these tasks on some days.  (Doc. 46-1 at 1; Doc. 46-1 at 1).

---

[3] The parties dispute when Henry's employment with Alabama ReBath commenced.  (Doc. 46-1 at 1; Doc. 53-1 at 1).

[4] Henry claims he also picked up trash that had been dumped outside.  (Doc. 44-1 at 7-8; Doc. 46-1 at 1).  Wells denies Henry was required to clean up trash (Doc. 44-3 at 52), and the defendants contend that even if Henry performed such work, the time it required was *de minimis* (Doc. 51 at 24).

[5] Henry disputes that Alabama ReBath always paid this fixed amount of load/unload time.  (Doc. 47 at 7).

2

If Henry was to receive compensation for load/unload time on a given day, "yes" was recorded in a field for load/unload time on his pay sheet.  (*See, e.g.,* Doc. 44-5 at 62).  Henry's pay sheets for May and June 2015 indicate he was paid $15 for load/unload time on days he was credited with that time.  (*Id.* at 62-66).  However, Henry's pay sheets for July and August 2015 indicate Henry was paid $11.25 for that time.  (*Id.* at 67-76).  Whatever Henry was paid for load/unload time, neither the estimated 45 minutes required to unload debris and load job materials nor the actual time Henry spent performing these tasks appears to have been counted towards Henry's overtime.  (*See, e.g., id.* at 62).  Henry's pay sheets appear to calculate straight time and overtime based solely on time spent on the job site, with load/unload time added on top of that calculation.  (*See, e.g., id.*).  Henry's pay sheets for May through August 2015 show he worked 40 or more hours on the job site during some weeks.  (*Id.* at 62, 63, 65, 66, 68-70, 74-76).

After unloading demolition debris and loading job materials, Henry departed the Alabama ReBath office for the job site in his company van.  (Doc. 46-1 at 1).  In addition to job materials, Henry carried personal and company tools in the van.  (Doc. 44-7 at 5).  Henry claims he was not always paid for travel time from the Alabama ReBath office to the job site.  (Doc. 46-1 at 1).  He further claims that when was paid for this time, his compensation was based on an estimate derived from Google Maps, not his actual travel time, which was greater than the estimated

time.  (*Id.* at 1-2).   However determined, travel time from the Alabama ReBath office to the job site, like load/unload time, does not appear to have been counted towards Henry's overtime.  (*See, e.g.,* Doc. 44-5 at 61).

Henry typically returned his company van to the Alabama ReBath office at the end of the day.  (Doc. 44-1 at 20).  The defendants did not compensate Henry at all for return travel time.  (Doc. 44-7 at 3).  Henry testified the defendants required him to return his company van to the Alabama ReBath office at the end of the day.  (Doc. 44-1 at 20; Doc. 46-1 at 2).  Wells testified Henry could drive the van home at the end of the day if his home was closer to the job site than the Alabama ReBath office.  (Doc. 44-7 at 5).  David Wilkinson, who was employed by Alabama ReBath in a supervisory role, testified Henry could drive his company van home at the end of the day on occasion if the job site was close to his home, but that otherwise he had to bring the van back to the Alabama ReBath office. (Doc. 44-6 at 16; Doc. 44-10 at 17).  Henry acknowledged he sought and received permission to drive the van home on two or three occasions.  (Doc. 44-1 at 11; Doc. 46-1 at 2).  For some period of time in early-to-mid September 2015, Henry did not work while his company van was in the shop for repairs.  (Doc. 44-8 at 122-28).

Henry complained to Wells and Wilkinson about his compensation for load/unload time and travel time.  (Doc. 46-1 at 2-3; Doc. 51 at 28).[6]  Henry testified Wells appeared frustrated and upset regarding Henry's complaints.  (Doc. 46-1 at 2-3).[7]  Henry claims that in retaliation for his complaints, Wells informed him and his co-workers they would not be compensated for load/unload time at all.  (Doc. 44-1 at 21; Doc. 46-1 at 2; Doc. 47 at 23).  However, Henry's pay sheets for the weeks leading up to September 1, 2015, show he was paid for some load/unload time during each of those weeks.  (Doc. 44-5 at 62-76).

Beginning on September 1, 2015, Alabama ReBath paid Henry on a commission, rather than an hourly basis.  (Doc. 44-7 at 4).  Henry claims he never wanted to be paid on commission, which resulted in a smaller rate of pay than his hourly rate.  (Doc. 44-1 at 10-11; Doc. 46-1 at 3; Doc. 47 at 10).  According to Henry, he was transitioned to commission-based pay in retaliation for his complaints regarding his compensation for load/unload time and travel time.  (Doc. Doc. 46-1 at 2-3; Doc. 47 at 23).  In support of their first motion for summary judgment, the defendants calculated Henry's rate of pay for each of the six weeks he was compensated on a commission by dividing his hours for each week into his compensation for each week.  (Doc. 36 at 10).  In all but two of those weeks,

---

[6] The defendants dispute the precise nature of Henry's complaints and characterize them as arising from Henry's misunderstanding of the Alabama ReBath pay system.  (Doc. 51 at 28).
[7] The defendants dispute this testimony.  (Doc. 52 at 5).

Henry's rate of pay exceeded his $20 hourly rate.  (*Id.*).  Henry did not dispute the accuracy of this calculation (Doc. 38), which formed a basis for the entry of summary judgment in the defendants' favor on Henry's unpaid wages and overtime claims for the period September 1, 2015, to October 26, 2015 (Doc. 42).

Wells terminated Henry on October 26, 2015.  (Doc. 44-3 at 52; Doc. 44-7 at 2).  Wells did not give Henry a reason for his termination.  (Doc. 44-1 at 16; Doc. 44-3 at 54).  Henry testified he did not ask for one.  (Doc. 44-1 at 16).  Wilkinson testified Wells did not have any conversation with him about why Henry was no longer working for Alabama ReBath.  (Doc. 44-10 at 20, 28).

Henry claims Wells terminated him because he continued to complain about his compensation for load/unload time and travel time and about his transition to commission-based pay.  (Doc. 44-1 at 23; Doc. 46-1 at 3).  Wells denied he terminated Henry because of any complaints Henry made regarding pay.  (Doc. 44-3 at 55).  He testified he terminated Henry because (1) Henry failed to communicate with him and other Alabama ReBath employees for purposes of scheduling, (2) there were frequent problems with Henry's jobs, for which Henry refused to take responsibility, (3) Henry rebuffed Wells' efforts to help him learn how to do his job more effectively and efficiently, and (4) Henry generally had a poor attitude.  (*Id.* at 52-55).

6

Wells did not discipline Henry for issues regarding his communication, job performance, or attitude pursuant to a progressive discipline policy included in the Alabama ReBath Employee Handbook prior to terminating him.  (Doc. 44-3 at 54). A prefatory paragraph to the policy states, "progressive discipline is <u>not</u> appropriate in every case and Alabama Re-Bath will review each case on its own facts."  (Doc. 44-4 at 47 (emphasis in original)).  A note at the end of the policy states, "[t]he progressive discipline procedure outlined here is a general guideline only and the management of Alabama Re-Bath is **<u>NOT required</u>** to follow this procedure in every case."  (*Id.* at 50 (emphasis in original)).  Wells testified Alabama ReBath had an informal and liberal approach to discipline at the time of Henry's employment.  (Doc. 44-3 at 18-19).

Henry testified neither Wells nor Wilkinson ever discussed with him issues regarding communication, timely completion of jobs, scheduling, job performance, or attitude.  (Doc. 44-1 at 11-12; Doc. 46-1 at 3).  He notes that during a meeting to discuss his transition to commission-based pay, he told Wells there were no complaints regarding his jobs and that his jobs were perfect.  (Doc. 46-1 at 2). Wells responded by mentioning a customer complaint but noting he was not trying to blame Henry for the complaint, which he suspected had something to do with "corporate."  (*Id.*).

Wilkinson testified he personally did not have frustrations with Henry's communication (Doc. 44-10 at 16), could only guess at what specific issues Wells had with Henry's communication (*id.*),[8] and himself did not receive complaints regarding the quality of Henry's work (*id.* at 24). However, he also testified Wells was frustrated with Henry's job performance in that it took Henry longer than scheduled to complete jobs, which made it difficult to schedule Henry for jobs, and that there were "a lot of problems" on Henry's jobs. (Doc. 44-10 at 12, 14-16). Text messages from Wells to Henry in October 2015 confirm Wells was frustrated with Henry's communication as it related to scheduling. On Friday, October 2, 2015, after Henry told Wells he planned to have a customer sign paperwork on the following Monday morning at 8:00 A.M., the following exchange ensued:

> **Wells:** and what about monday's schedule? and why couldn't you discuss this earlier? this is why we struggle with scheduling and why we don't schedule ahead. i can't have surprises. monday expects you to be there around 8. so how do we do both? i tend to be okay with a lot of things as long as they are not surprises because i can't plan around surprises. so i would like to know your plan for Monday being you have to be at two places at once. how do we reconcile this?

---

[8] Henry mischaracterizes Wilkinson's testimony on this point. While Henry claims Wilkinson testified he did not recall Wells having frustrations with Henry's communication (Doc. 47 at 25), Wilkinson testified as follows:

> Q. Do you recall specifically what issues Andrew had about the communication?

> A. I could only guess.

(Doc. 44-10 at 16).

**Henry:** Monday is not a problem as Gloria is aware I am coming first thing to have that signed and I will call the customer and make them aware of when I will be arriving.  I will take care of my end and I understand how frustrating that can be to you worrying about it . . . .

. . .

**Wells:** i think you very well understand how unforeseen items can cause a schedule delay . . . right? . . . i've cleared out most of our issues, but right now what's left is and seems to still be is communication[.]

. . .

**Wells:** so the next thing to address is communication.  you have to communicate items like this with me or us.  if there was an issue with gloria, it would've been nice to know wednesday or as soon as you know so we can address it together[.]

(Doc. 44-9 at 3-4).  On Friday, October 16, 2015, after Henry told Wells he would be available for another job on the following Tuesday, the following exchange ensued:

**Wells:** ugh.  we already scheduled you monday[.]  why would you say this on friday[.]  last week you told us you were good for monday[.]  i mean this week on wed[.]

**Henry:** I'm in the bathroom.

**Wells:** are you joking or serious.  i need to know what to do as it's already scheduled and unsure if i now have to unscheduled this[.]

**Henry:** Is Tuesday out of the question?

**Wells:** well we just booked him.  so yes.  otherwise we keep doing the very thing we have been trying so hard to avoid.  the whole point of not scheduling ahead unless you say something was to keep us from rescheduling.  it takes a lot of time chasing them around all the time. and the uncertainty of the rest of the week makes it difficult to schedule anything else[.]  now that you finally told us ahead like we asked, we did what we said which is we scheduled ahead.  now you're asking us to undo this[.]

. . .

**Wells:** what would solve my problem in scheduling is communication, in a nut shell[.]  you communicate, we schedule.  you become predictable, we schedule without having to communicate[.] . . . help me with communication.  i don't know how to fix this but i'm doing the best i can[.]

(*Id.* at 8-10).  Text messages from Wells to Henry in October 2015 also show Wells believed there to be problems with the quality of Henry's work and that Henry denied responsibility for the alleged problems.  On October 26, 2015, the day of Henry's termination, Wells and Henry exchanged text messages regarding one customer's squeaky floor and another's plumbing problem:

**Henry:** . . . . [the customer's floor] did not squeak until a  month or so later.  Was not squeaking directly after install.  This problem had nothing to do with my install. . . ."

**Wells:** she called it in the day or two later.  we were out there twice before i had sent you guys on friday[.]  we've been dealing with it since.  you just didn't know about it until about a month later[.]"

. . .

10

**Wells:** bottom line . . . it should've been taken care of and it's easy to say it didn't squeak then (except it actually did).  for it to happen exactly right after we were working in there is too much of a coincidence[.]

. . .

**Wells:** . . . . Abbot has called back and she's getting back flow of water filling up her sink.  it seems possible you may have had trash in the sink that clogged it up as it didn't happen before we did her job.

**Henry:** Abbot's problem is in the wall no possible way trash could get in that area.

(Doc. 44-9 at 19-20).

## II. Procedural History

In their first motion for summary judgment, the defendants sought dismissal of Henry's claims for unpaid wages and overtime for the period September 1, 2015, to October 26, 2015, during which the defendants paid Henry on a commission basis, on the grounds those claims were subject to the "retail or service establishment" exemption codified at 29 U.S.C. § 207(i).  (Doc. 35).  Henry conceded the argument.  (Doc. 38).  The undersigned granted the defendants' motion, dismissing Henry's claims for unpaid wages and overtime for the period September 1, 2015, to October 26, 2015, with prejudice.  (Doc. 42).

Through the presently pending motion, the defendants seek summary judgment on Henry's claims for unpaid wages and overtime compensation related to "load/unload time" and travel time incurred prior to September 1, 2015, in violation of 29 U.S.C. §§ 206 and 207 and unlawful retaliation in violation of 29 U.S.C. § 215(a)(3).

## III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the movant fails to carry its initial burden, the motion must be denied, and the court need not consider what showing the non-movant has made. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). Otherwise, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Celotex Corp.*, 477 U.S. at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if there is a real basis in the record for the dispute, *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005), and the evidence is such that a reasonable jury could return a verdict for the non-movant, *Anderson*, 477 U.S. at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick*, 2 F.3d at 115.

## IV. Discussion

The defendants seek summary judgment on Henry's claims for load/unload time and travel time from the Alabama ReBath office to the job site on the ground Henry's pay sheets show he was compensated for that time. (Doc. 51 at 21-23). They claim the Portal-to-Portal Act, which amended the FLSA, excepts Alabama ReBath from compensating Henry for return travel time. (*Id.* at 24-26). Finally, they claim Henry has failed to make out a *prima facie* case of retaliation and that they have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry cannot rebut as pretext. (*Id.* at 27-32).

### A. Load/Unload Time & Travel Time to Job Site

In his interrogatory responses, Henry identified a number of days as to which the job start time recorded on his time sheet was earlier than the job start time recorded on his pay sheet. (Doc. 44-2 at 10-11). He claimed he did not receive compensation for the difference, totaling 42 hours, which represented time he spent unloading demolition debris and loading job materials. (*Id.*). The defendants claim Henry has simply misunderstood how to read his pay sheets, which recorded load/unload time and travel time separately from time spent on the job site. (Doc. 51 at 21). According to the defendants, their records show Henry was not yet employed by Alabama ReBath on days as to which he claims a total of 6.5 hours owed and that he was paid for a total of 34.66 hours of load/unload time and travel time on the remaining days. (*Id.* at 21-23).[9] The defendants' calculation is based on an allotment of 45 minutes of load/unload time to Henry, irrespective of the actual time Henry spent unloading demolition debris and loading job materials. (*See id.*). For purposes of the defendants' motion, the dispositive

---

[9] In response, Henry claims there are missing time sheets and that his pay sheets were altered to remove load/unload time and travel time from the Alabama ReBath office to the job site, as a result of which he can meet a reduced burden of proving his claims for this time through deposition and affidavit testimony. (Doc. 47 at 13-15). It is not necessary to address the substance of Henry's response or the defendants' reply thereto (Doc. 52 at 6-9) because, as discussed below, the defendants have not demonstrated Henry's compensation for load/unload time and travel time to the job site complied with the FLSA's minimum wage and overtime requirements. *See Fitzpatrick*, 2 F.3d at 1116 ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made.").

question is whether the defendants, as the movants, have shown payment of Henry for load/unload time in this manner complied with the FLSA's minimum wage and overtime requirements.  As discussed below, they have not carried their burden on this issue.

While the FLSA does not require an employer to compensate an employee on an hourly basis but, rather, permits an employer to compensate an employee on a piece-rate, salary, commission, or other basis, an employer cannot necessarily pay an employee on one of these alternative bases without consideration of the hours actually worked by the employee.  29 C.F.R. § 778.109.[10]  Where an employer compensates an employee on an other-than-hourly basis, compliance with the FLSA's minimum wage and overtime requirements is generally determined by reference to an employee's "regular rate of pay," and that rate is determined by reference to the hours actually worked by the employee.  *Id.*  For example, if an employee is compensated solely on an hourly basis, his regular rate is his hourly rate.  29 C.F.R. § 778.110.  If an employee is paid a flat sum for doing a particular job without regard to the number of hours spent on the job, his regular rate is the total of all sums received at the job rate for a given work week divided by the total hours actually worked during that week.  29 C.F.R. § 778.112.  If an employee is compensated on the basis of multiple rates, his regular rate is his total

---

[10] The Department of Labor's regulations implementing the FLSA are accorded *Chevron* deference.  *Falken v. Glynn County, Georgia*, 197 F.3d 1341, 1346 (11th Cir. 1999).

earnings from all rates for a given work week divided by his total hours worked during that week.  29 C.F.R. § 778.115; *see also* §778.109.  However computed, the employee's regular rate of pay must not fall below the statutory minimum wage, and the employee must be compensated at one-and-one-half times that rate for hours worked in excess of forty.  29 C.F.R. § 778.107; *see also* 29 U.S.C. §§ 206, 207; *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 667 (E.D. Ark. 2011) (holding that employer cannot compensate employees based on amount of time a reasonably efficient employee would spend donning and doffing smocks if actual time is greater and result is that compensation falls below FLSA's minimum wage and overtime requirements).[11]

As the movants, the defendants bear the burden of demonstrating their entitlement to summary judgment – that there are no genuine issues of material fact regarding Henry's compensation for load/unload time or whether this compensation complied with the FLSA's minimum wage and overtime requirements.  Specifically, that means (1) calculating a regular rate of pay for each week Henry worked, based on his hourly compensation, flat-rate compensation for

---

[11] For example:

> Johnson works 40 hours a week at the plant and is paid $7 an hour, or $280. In the same workweek he earns $60 for 10 hours of piecework done at home. His hourly rate of pay is $6.80 [($280 + $60) ÷ 50]. As overtime he gets an extra half-time for the 10 hours he worked over 40, or $34 [10 × $3.40]. His total wage for the week is $374 [$280 + $60 + $34].

1 GUIDE TO EMPLOYMENT LAW AND REGULATION § 13:32.

load/unload time, and the number of hours he actually worked at both of these rates, (2) confirming that rate did not fall below the statutory minimum wage, and (3) showing that Henry was compensated at one-and-one half times that rate for hours worked in excess of forty.  Because the defendants have not done this, they have fallen short of meeting their burden.  *See Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320, 326-27 (D.N.J. 2015) (denying employer's motion for summary judgment where employer neglected to address question as to whether its method of overtime compensation complied with FLSA); *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966) (holding district court's conclusion employer had complied with FLSA's overtime requirements was clearly erroneous where employer paid employees based on estimated hours and kept no record of hours actually worked).

Although the burden is the defendants, in the interest of an efficient resolution of the parties' dispute and because, ultimately, liability under the FLSA is a question of law, *Birdwell v. City of Gadsden*, 970 F.2d 802, 808 (11th Cir. 1992) ("It is for the court to determine if a set of facts gives rise to liability [under the FLSA]; it is for the jury to determine if those facts exist."), the undersigned has scrutinized the evidence submitted by both parties and attempted to identify undisputed facts from which it could be determined whether Henry's compensation for load/unload time was FLSA-compliant.  The answer to the question turns on

the number of hours Henry actually spent at the Alabama ReBath office unloading demolition debris and loading job materials in a given work week and the compensation he received for that time. *See* discussion *supra*. Neither Henry's time sheets nor his pay sheets explicitly record the actual time Henry spent unloading debris and loading materials on a given day. To the extent the time could be deduced from other recorded information, the undersigned declines to undertake this time-consuming analysis, given other questions of fact would nonetheless preclude summary judgment.

First, while Wells testified Henry was paid $15 for load/unload time (Doc. 44-7 at 3) and Henry's pay sheets for May and June 2015 indicate the same (Doc. 44-5 at 62-66), Henry's pay sheets for July and August 2015 indicate he was paid $11.25 for that time (*id.* at 67-76). At least with respect to July and August 2015, determination of which rate is accurate – the rate Wells testified Henry was paid for load/unload time or the rate recorded on Henry's pay sheets as paid for that time – is necessary to determine Henry's regular rate of pay.

Second, even assuming Henry spent no more than 45 minutes unloading demolition debris and loading job materials and was compensated $15 for that time, there is some question whether that compensation complied with the FLSA's overtime requirements. Henry's pay sheets appear to calculate straight time and overtime based solely on time spent on the job site, with load/unload time added on

top of that calculation. (*See, e.g.,* Doc. 44-5 at 62). As a general rule, all compensable time must be considered in determining whether overtime compensation is owed. *See* 29 C.F.R. § 790.6 ("Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked . . . ."); 29 C.F.R. § 778.315 ("In determining the number of hours for which overtime compensation is due, all hours worked [] by an employee for an employer in a particular workweek must be counted."); 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity . . . must be counted as hours worked."); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 88 (W.D.N.Y. 2005) ("[C]ompensable travel time is to be included in determining the number of hours an employee has worked in a given week. . . . There is no basis to treat travel time differently from employees' other work-related activites, and those hours count in determining whether the employee is entitled to overtime."); *Kroll v. Home Depot U.S.A., Inc.*, 2003 WL 23332905, at *4 (S.D. Ga. Aug. 20, 2003) (holding that employee would be entitled to overtime pay for compensable travel time that occurred during week in which she worked more than forty hours). To the extent Henry's hours on the job site exceeded 40 in a given week or those hours together with the hours Henry spent unloading demolition debris and loading job materials exceeded 40 – and there is evidence they did (Doc. 44-5 at 62, 63, 65, 66, 68-70,

74-76) – Henry would be due overtime compensation for load/unload time, absent a valid argument from the defendants to the contrary.  The same is true with respect to Henry's travel time from the Alabama ReBath office to the job site.

For the foregoing reasons, the defendants' motion for summary judgment on Henry's claims for load/unload time and travel time to the job site are due to be denied.

### B. Return Travel Time

Under the Portal-to-Portal Act, which amended the FLSA, an employer is not required to pay an employee for (1) "traveling to and from the actual place of performance of the principal activity or activities which [the] employee is employed to perform" or (2) "activities which are preliminary to or postliminary to [the employee's] principal activity or activities."  29 U.S.C. § 254(a).

The term "principal activities" includes all activities that are an "integral and indispensable part of the principal activities." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)).  Therefore, while ordinary home-to-work and work-to-home travel is not compensable, travel that is an integral and indispensable part of an employee's principal activities is compensable.  *See Llorca v. Sheriff, Collier Cty., Florida*, 893 F.3d 1319, 1324 (11th Cir. 2018) (holding that in the Eleventh Circuit, "commuting time and other preliminary and postliminary activities are compensable only if they are <u>both</u> an

integral <u>and</u> indispensable part of the principal activities" (emphasis in original));
*Preston v. Settle Down Enterprises, Inc.*, 90 F. Supp. 2d 1267, 1279 (N.D. Ga.
2000) (noting travel time is compensable only if it is a principal activity of the
employee).   An activity such as travel is integral and indispensable to an
employee's principal activities if it "is an intrinsic element of those activities and
one with which the employee cannot dispense if he is to perform [the] principal
activities." *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (U.S. 2014).

In *Integrity Staffing*, the United States Supreme Court emphasized the
integral-and-indispensable test is tied to the productive work an employee is
employed to perform and held that the United States Court of Appeals for the
Ninth Circuit had erred in focusing on whether an employer required a particular
activity. *Id.* at 519.   According to the defendants, this calls into doubt the decision
of the United States Court of Appeals for the Eleventh Circuit in *Burton v.
Hillsborough Cty., Florida*, 181 F. App'x 829 (11th Cir. 2006), on which Henry
relies to support his claim the defendants were required to pay him for return travel
time because they mandated he leave his company van at the Alabama ReBath
office at the end of the day.   (Doc. 52 at 9 n.37).   In that case, the circuit court held
that "if an employee driving an employer-owned car is *required* to return to the
employer's premises after a day's work prior to returning home, that time is
compensable under the FLSA."   *Id.* at 835 (emphasis in original).   Although the

Eleventh Circuit has not expressly addressed *Burton* following *Integrity Staffing*, it has noted that "the fact that an employer requires or benefits from the activity at issue does not establish that the activity is integral and indispensable." *Llorca*, 893 F.3d at 1324 (citing *Integrity Staffing*, 135 S. Ct. at 519). *See also Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1370 (S.D. Ga. 2015) (noting that in *Integrity Staffing*, the Supreme Court rejected tests like the one articulated in *Burton* to the extent they focus on whether an employer required a particular activity). However, persuasive authority suggests it is not irrelevant, either.

In *Meeks v. Pasco Cty. Sheriff*, a deputy sheriff sought overtime compensation for time spent transporting his patrol car between a sheriff's patrol division office and his patrol zone. 688 F. App'x 714, 716 (11th Cir. 2017). The deputy sheriff was not allowed to store the car at home but, rather, was required to store it at a sheriff's patrol division office because he lived more than fifteen miles outside the county. *Id.* Citing *Integrity Staffing*, the Eleventh Circuit held that the travel time was an integral and indispensable part of the deputy sheriff's principal activities – his patrol duties – because he relied on the patrol car to maintain contact with the sheriff and respond to calls assigned by the sheriff and could not have patrolled his zone without it. *Id.* at 717. In other words, although the requirement that the deputy sheriff store his patrol car at a designated location may not have been sufficient to render the time spent transporting it between that

location and his patrol zone compensable, it was relevant to the extent the car was essential to the deputy sheriff's job; the deputy sheriff had to have the car, and because his employer required it to be stored at a designated location, he had to transport it between that location and his patrol zone.

The regulations promulgated by the Department of Labor to implement the FLSA lend support to the conclusion an employer's requirement may render travel time compensable. *See* 29 C.F.R. § 785.38 ("If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.  However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel is not hours worked.").

Here, evidence Henry carried job materials and personal and company tools in his company van (Doc. 44-7 at 5) and was not able to work for some period of time in early-to-mid September 2015 while the van was in the shop for repairs (Doc. 44-8 at 122-28) suggests Henry relied on the van to transport materials to and from the job site and could not have performed his principal activity – installing bathrooms – without it.  Moreover, there is conflicting testimony as to whether the defendants required Henry to return his company van to the Alabama ReBath office at the end of the day.  (Doc. 44-1 at 20; Doc. 44-6 at 16; Doc. 44-7

at 5; Doc. 46-1 at 2; Doc. 44-10 at 17).   Resolution of these factual issues is necessary to determine whether Henry's return travel time is compensable under the FLSA.   Accordingly, the defendants' motion for summary judgment on this claim is due to be denied.

### C. Retaliation

The FLSA protects an employee against retaliation for asserting his rights under the statute.   *See* 29 U.S.C. § 215(a)(3).   To establish a *prima facie* case of FLSA retaliation, a plaintiff must show the following: (1) he engaged in activity protected under the FLSA, (2) he subsequently suffered adverse action by his employer, and (3) there was a causal connection between his protected activity and the adverse action.   *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).   If the plaintiff makes this *prima facie* showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its adverse action. *See id.*   If the employer is able to do so, the burden shifts back to the plaintiff to demonstrate the proffered reason is pretext for retaliation.   *See id.*; *see also Johnson v. Advertiser Co.*, 778 F. Supp. 2d 1270, 1277 (M.D. Ala. 2011) (citing *Wolf* for proposition that "[i]n the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act").   If the plaintiff fails to demonstrate a genuine dispute as to a material fact regarding pretext, the employer

is entitled to summary judgment on the retaliation claim. *Johnson*, 778 F. Supp. 2d at 1277 (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

Henry claims that in retaliation for his continued complaints regarding his compensation, the defendants first eliminated compensation for all load/unload time, then transitioned him to commission-based pay, and finally terminated his employment. (Doc. 44-1 at 10-11, 21, 23; Doc. 46-1 at 2-3; Doc. 47 at 23).  The defendants argue Henry's complaints did not rise to the level of activity protected by the FLSA; the acts, other than termination, of which Henry complains are not adverse for purposes of maintaining an FLSA retaliation claim;[12] Henry cannot demonstrate a causal connection between his complaints and his termination; and they have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry cannot rebut as pretext.  (Doc. 51 at 26-32).

### 1. Elimination of Compensation for Load/Unload Time

Henry is not specific as to when he claims the defendants eliminated compensation for all load/unload time.  To the extent he claims the defendants took this action prior to September 1, 2015, his pay sheets refute the claim.  Henry's pay sheets for the weeks leading up to September 1, 2015, show Henry was paid for

---

[12] The defendants address this aspect of Henry's FLSA retaliation claim in their amended brief in support of their second motion for summary judgment.  (Doc. 51 at 26 n.3).  Henry, who did not oppose the filing of the amended brief to address the same (Doc. 49), was given an opportunity to respond to the defendants' position (Doc. 50) but did not do so.

some load/unload time during each of those weeks. (Doc. 44-5 at 62-76). To the extent Henry claims the defendants eliminated compensation for all load/unload time on or after September 1, 2015, Henry has conceded he was properly compensated between that date and his termination on October 26, 2015 (Doc. 38), as a result of which any such action cannot have been adverse for purposes of maintaining an FLSA retaliation claim.

### 2. Transition to Commission Compensation

Henry claims his transition to commission-based pay was adverse because he never wanted to be paid on commission and his commission-based rate of pay was smaller than his hourly rate. (Doc. 44-1 at 10-11; Doc. 46-1 at 3; 47 at 10). "[N]ot everything that makes an employee unhappy is an actionable adverse employment action." *Bass v. Bd. of Cty. Comm'rs, Orange County, Florida*, 256 F.3d 1095, 1118 (11th Cir. 2001) (internal quotation marks omitted), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). To be adverse, conduct falling short of termination, failure to hire, or demotion " 'must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.'" *Blue v. Dunn Const. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (quoting *Crawford*, 529 F.3d at 970). In other words, the mere fact Henry did not want to be paid on commission

does not make his transition to commission-based pay an adverse action. Moreover, his claim the transition negatively affected his rate of pay is refuted by evidence he did not contest.   In support of their first motion for summary judgment, the defendants calculated Henry's rate of pay for each of the six weeks he was compensated on a commission basis by dividing his hours for each week into his compensation for each week.  (Doc. 36 at 10).  In all but two of those weeks, Henry's rate of pay exceeded his $20 hourly rate.  (*Id.*).  Henry did not dispute the accuracy of this calculation (Doc. 38), which formed a basis for the entry of summary judgment in the defendants' favor on Henry's unpaid wages and overtime claims for the period September 1, 2015, to October 26, 2015 (Doc. 42). Accordingly, Henry's transition to commission-based pay was not an adverse action for purposes of maintaining an FLSA retaliation claim.

### 3. Termination

The defendants do not argue, and it is beyond dispute, termination is an adverse action for purposes of maintaining an FLSA retaliation claim.  *See Blue*, 453 F. App'x at 884 (identifying termination as adverse employment action). However, this aspect of Henry's FLSA retaliation claim fails, as well, because the defendants have articulated legitimate, non-retaliatory reasons for Henry's termination that Henry has failed to rebut as pretext.

Wells denied he terminated Henry because of any complaints Henry made regarding pay.    (Doc. 44-3 at 55).   Wells testified he terminated Henry for reasons that included Henry's lack of communication, which affected scheduling, and problems with the quality of Henry's work for which Henry refused to take responsibility.   (*Id.* at 52-55).   These are legitimate, non-retaliatory reasons for terminating an employee.   *See Penaloza v. Target Corp.*, 2012 WL 6721011, at *10 (M.D. Fla. Dec. 27, 2012) ("Poor job performance . . . is a legitimate, non-discriminatory reason for adverse employment action."), *aff'd* 549 F. App'x 844 (11th Cir. 2013); *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, x (holding that employee's interpersonal and communication problems were legitimate, non-discriminatory reasons for his termination); *Brown v. Ohio State Univ.*, 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) (holding that failure to accept problems within her responsibility, untimely completion of assignments, and poor communication are legitimate, non-discriminatory reasons for an employee's termination), *aff'd*, 385 F. App'x 486 (6th Cir. 2010).   Accordingly, the burden shifts to Henry to demonstrate a genuine issue of material fact as to whether the defendants' proffered reasons for his termination are pretext.   *See Johnson*, 778 F. Supp. 2d at 1277.

To demonstrate pretext, a plaintiff "must produce sufficient evidence for a reasonable fact finder to conclude that a retaliatory reason for the adverse

employment action is more likely or that each of the employer's proferred reasons for the adverse employment action is unworthy of credence." *Id.* at 1281 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1277, 1289 (11th Cir. 2005); *Chapman v. Al Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000)); *see also Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823-24 (11th Cir. 2008). " 'Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it.'" *Raspanti*, 266 F. App'x at 824 (quoting *Chapman*, 229 F.3d at 1030).

Henry first argues the defendants' proffered reasons for his termination are pretext because the defendants never discussed with him problems with communication, scheduling, job performance, or attitude before dismissing him. (Doc. 47 at 23-26). If true, this might create an inference of pretext. *See Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1294 (11th Cir. 1989) (holding that lack of complaints or disciplinary reports in employee's personnel file could support finding of pretext); *but see Wascura v. City of South Miami*, 257 F.3d 1238, 1245-46 (11th Cir. 2001) (discounting lack of such evidence where there was no formal review process for employee). However, text messages exchanged between Wells and Henry refute Henry's claim the defendants did not discuss communication, scheduling, and job performance issues with him. (Doc. 44-9 at 3-4, 8-10). Henry

does not dispute the authenticity of these messages.  Moreover, Wilkinson testified Wells was frustrated with Henry's job performance in that it took Henry longer than scheduled to complete jobs, which made it difficult to schedule Henry for jobs, and there were "a lot of problems" on Henry's jobs.  (Doc. 44-10 at 12, 14-16).    That  Wilkinson  personally  did  not  have  frustrations  with  Henry's communication (*see id.* at 16) or receive complaints about the quality of Henry's work (*see id.* at 24) is not sufficiently probative of pretext, given the evidence, including  Wilkinson's  own  testimony,  Wells  was  frustrated  with  Henry's  job performance for a variety of reasons.  This evidence also diminishes any probative value that could otherwise be assigned to a single incident identified by Henry where Wells told Henry he suspected "corporate," not Henry, was to blame for a problem with one of Henry's jobs.  (*See* Doc. 46-1 at 2).

Henry next argues the defendants' proffered reasons for his termination are pretext because he was not disciplined in accordance with Alabama ReBath's progressive discipline policy.  (Doc. 47 at 26-27).  An employer's departure from normal  procedures  may  evidence  pretext.    *See Bass*, 256 F.3d at 1108 ("An employer's  violation  of  its  own  normal  hiring  procedure  may  be  evidence  of pretext."); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (holding that employer's issuance of separation notice twelve days after employee's termination, when usual practice was to prepare separation notice

within one or two days of termination, was evidence of pretext). However, the Alabama ReBath policy is peppered with language, some in emphasized font, making it clear it is not strictly applied (*see* Doc. 44-4 at 47, 50), and Wells testified Alabama ReBath had an informal and liberal approach to discipline at the time of Henry's employment (Doc. 44-3 at 18-19). For these reasons, that Henry was not disciplined in accordance with Alabama ReBath's progressive discipline policy prior to his termination does not cast doubt on the defendants' proffered reasons for that termination.

Finally, Henry argues the defendants' proffered reasons for his termination are pretext because they did not give him a reason for his termination at the time of his dismissal. (Doc. 47 at 27-28). Henry cites *Mock v. Bell Helicopter Textron, Inc.*, 196 F. App'x 773 (11th Cir. 2006), in support of this argument. (Doc. 47 at 27). In that case, the Eleventh Circuit held that a triable issue of fact existed as to whether an employer's proffered reason for terminating an employee was pretext where the employee insisted the employer give him its reason for terminating him at the time of termination and the employer refused to do so, only articulating a reason (unacceptable performance) in a later letter. *Mock*, 196 F. App'x at 774. By contrast, Henry testified he did not ask why he was being terminated. (Doc. 44-1 at 16). *See Kohser v. Protective Life Corp.*, 2015 WL 1395911, at *7-8 (N.D. Ala. Mar. 25, 2015) (distinguishing *Mock* where evidence failed to show employee

asked any questions regarding her demotion or that employer refused to provide her with any answers about her work-related deficiencies), *aff'd*, 649 F. App'x 774 (11th Cir. 2016).  That Wells did not tell Wilkinson he terminated Henry because of performance issues (*see* Doc. 44-10 at 28) does not call the defendants' proffered reasons for Henry's termination into question given Wells had no conversation with Wilkinson at all about why Henry was no longer working for Alabama ReBath (*id.* at 20).

Because Henry has failed to raise a genuine issue of material fact regarding whether the defendants' legitimate, non-retaliatory reasons for terminating him were pretext, the defendants are entitled to summary judgment on Henry's FLSA retaliation claim.  *See Johnson*, 778 F. Supp. 2d at 1277.

## V. Conclusion

For the foregoing reasons, the defendants' second motion for summary judgment (Doc. 43) is **DENIED** as to Henry's claims for unpaid wages and overtime compensation related to "load/unload time" and travel time incurred prior to September 1, 2015.  The motion is **GRANTED** as to Henry's FLSA retaliation claims, and those claims are **DISMISSED WITH PREJUDICE**.

**DONE** this 9th day of January, 2019.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE